UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

———————————————————————X

In re:                                                                    Chapter 11
                                                                          Case No. 13-44093 (NHL)
Lake Charles Retail Development LLC,

                              Debtor.

———————————————————————X

In re:
                                                                          Adv. Proc. No. 13-01477 (NHL)
Lake Charles Retail Development LLC,

                              Plaintiff,

LBUBS 2004-C8 Derek Drive, LLC; U.S. Bank
National Association; Bank of America, N.A. as
successor to LaSalle Bank National Association;
Lehman Brothers Holdings, Inc.; Aurora Bank FSB
f/k/a Lehman Brothers Bank FSB; Structured Asset
Securities Corporation II; Lennar Partners, Inc.;
and Red and Black Company,

                              Defendants.

———————————————————————X

**DECISION GRANTING MOTION TO DISMISS**

APPEARANCES:

Dwight Yellen                          Edward A Smith
Ballon Stoll Bader & Nadler PC         Venable LLP
729 Seventh Avenue, 17th Floor         Rockefeller Center
New York, NY 10019                     1270 Avenue of the Americas, 25th Floor
*Attorney for Debtor*                  New York, NY 10020
                                       *Attorney for LBUBS 2004-C8 Derek Drive, LLC,*
                                       *U.S. Bank National Association, Bank of America,*
Michelle Mandelstein                   *N.A. as successor to LaSalle Bank National*
Ballon Stoll Bader & Nadler PC         *Association, and Lennar Partners, Inc.*
729 Seventh Avenue, 17th Floor
New York, NY 10019
*Attorney for Debtor*

HONORABLE NANCY HERSHEY LORD
United States Bankruptcy Judge

Lake Charles Retail Development LLC (the "Debtor") owns and formerly operated a commercial shopping center located at 3507-3525 Derek Drive, Lake Charles, Louisiana (the "Property").  When the Debtor defaulted on its mortgage payments, the Fourteenth Judicial District Court for the Parish of Calcasieu, Louisiana (the "State Court") issued an Order for Executory Process in favor of LBUBS 2004-C8 Derek Drive, LLC ("Derek Drive"), authorizing the seizure and sale of the Property.

In response, the Debtor filed a petition under chapter 11 of the Bankruptcy Code. Thereafter, it commenced this adversary proceeding to challenge the validity of the transactions that securitized and transferred its mortgage to Derek Drive.[1]  Defendants Derek Drive; LNR Partners, LLC, f/k/a Lennar Partners, Inc.; U.S. Bank National Association ("U.S. Bank"), as Trustee for the Registered Holders of LB-UBS Commercial Mortgage Trust 2004-C8, Commercial Mortgage Pass-Through Certificates, Series 2004-C8 (the "Trust"); and Bank of America, N.A., solely in its capacity as former Trustee of the Trust (collectively, the "Defendants") filed a motion to dismiss the Debtor's Complaint (the "Motion to Dismiss"), pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1) and (6), made applicable by Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7012.  Because this Court lacks subject matter jurisdiction under the *Rooker–Feldman* doctrine to reconsider the State Court's decision and, alternately, the Complaint fails to state a claim upon which relief can be granted, the Motion to Dismiss is granted.

I.  JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by

---

[1] The complaint, filed on October 13, 2013, was followed by an amended complaint, filed on November 27, 2013 (the "Complaint").

order dated December 5, 2012.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

This decision constitutes the Court's findings of fact and conclusions of law to the extent

required by Bankruptcy Rule 7052.

## II.  BACKGROUND[2]

The Debtor acquired the Property, known as the Power Center, on July 28, 2004, and

financed the purchase with a $7,040,000 loan (the "Loan") from Lehman Brothers Bank FSB

("LBB").  Am. Compl. 5–6 ¶¶ 19–21, ECF No. 16.  In return, the Debtor delivered to LBB a

note, mortgage, assignment agreements, and other loan documents (collectively, the "Loan

Package").  Am. Compl. 5–6 ¶ 21, ECF No. 16.

The genesis of the instant dispute is a securitization transaction whereby numerous

commercial and multifamily loans were pooled into the Trust.  The Trust was created on

November 12, 2004, pursuant to a Pooling and Servicing Agreement (the "PSA") among

Structured Asset Securities Corporation II ("SASCO"), as depositor;[3] Lennar Partners, Inc. as

special servicer (the "Special Servicer");[4] and LaSalle Bank National Association ("LaSalle"), as

---

[2] In deciding the Motion to Dismiss under either Rule 12(b)(1) or Rule 12(b)(6), the Court takes as true the factual allegations found in the Complaint. *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).  The Court also considers the Pooling and Servicing Agreement, Pooling and Servicing Agreement (Nov. 12, 2004), *available at* http://edgar.sec.gov/ Archives/edgar/data/ 1308872/000009013605000892/file002.htm [hereinafter *PSA*], which is incorporated by reference in the Complaint, *Automated Salvage Transp., Inc. v. Wellabrator Envtl. Sys., Inc.*, 155 F.3d 59, 67 (2d Cir. 1998).  Moreover, the Court considers the Louisiana Order for Executory Process, Def.'s Req. Judicial Notice Ex. 1, ECF No. 23-1 [hereinafter Req.], a matter of which judicial notice may be taken, *Kesten v. E. Sav. Bank*, 07-CV-2071(JFB)(ARL), 2009 WL 303327, at *3 (E.D.N.Y. Feb. 9, 2009).

[3] On January 10, 2014, defendants Aurora Bank FSB, f/k/a Lehman Brothers Bank FSB ("Aurora") and SASCO filed a separate motion to dismiss the Complaint. ECF No. 25.  On the record of the hearing held on February 27, 2014, the Debtor consented to the dismissal of the Complaint without prejudice as against Aurora and SASCO and the Court directed the parties to submit an order. Tr. 33:15–25, Feb. 27, 2014, ECF No 37. On March 6, 2014, the Debtor filed a Notice of Dismissal without prejudice as against defendants Aurora and SASCO. ECF No. 38.

[4] According to the Motion to Dismiss, the Debtor incorrectly named Lennar Partners, Inc. as a party to this action.  The Motion to Dismiss identifies Lennar Partners, Inc. as a predecessor to LNR Partners, LLC. Mot. 19, ECF No. 22.

trustee.[5] Am. Compl. 9 ¶ 38, ECF No. 16.  In accordance with the PSA, which is governed by New York law, SASCO, as endorsee of the notes and mortgages, transferred all of its right, title, and interest in, to, and under the loans to the Trust.[6] Am. Compl. 9–10 ¶¶ 39–40, ECF No. 16. The PSA required that all assets be conveyed to, and accepted by, the Trust prior to December 2, 2004, the Trust's closing date. Am. Compl. 13–14 ¶¶ 61–63.

In order to obtain certain tax benefits, the PSA organized the Trust as a Real Estate Mortgage Investment Conduit ("REMIC"). Am. Compl. 11 ¶ 49, ECF No. 16.  The PSA directed the trustee to "elect to treat . . . the Trust Mortgage Loans . . . as a REMIC for federal income tax purposes" and prohibited any actions that would jeopardize REMIC status. *PSA* 2; Am. Compl. 11 ¶ 50, ECF No. 16.  The Internal Revenue Code limits REMIC treatment to entities that, "as of the close of the 3rd month beginning after the startup day,"[7] have "qualified mortgages" as "substantially all of [the entity's] assets." 26 U.S.C. § 860D(a)(4).  Correspondingly, obligations secured by real property transferred to the REMIC either on the startup day or within the following three month period are "qualified mortgages." 26 U.S.C. § 860G(a)(3).  Here, the PSA designated December 2, 2004 as the startup day and proscribed the acceptance of assets into the REMIC pools after that date. *PSA* 321, 323 § 10.01(c), (l); Am. Compl. 11 ¶¶ 50–53.

---

[5] The other parties to the PSA, Wachovia Bank, National Association, as Master Servicer; and ABN Amro Bank N.V., as Fiscal Agent, are not named as defendants in this proceeding. *PSA* 2.

[6] Article II of the PSA states "[t]he Depositor, concurrently with the execution and delivery hereof, does hereby assign, sell, transfer, set over and otherwise convey to the Trustee in trust, without recourse, for the benefit of the Certificate holders, all the right, title and interest of the Depositor in, to and under (i) the Trust Mortgage Loans . . . ." *PSA* 106 § 2.01.  The PSA defines "Trust Mortgage Loan" as "each of the mortgage loans listed on the Trust Mortgage Loan Schedule and from time to time held in the Trust Fund.  As used herein, the term 'Trust Mortgage Loan' includes the related Mortgage Note, Mortgage and other security documents contained in the related Mortgage File or otherwise held on behalf of the Trust." *PSA* 98.

[7] "The term 'startup day' means the day on which the REMIC issues all of its regular and residual interests." 26 U.S.C. § 860G(a)(9).

Schedule I to the PSA, titled "Trust Mortgage Loan Schedule" lists the Loan as an intended Trust asset.[8] *PSA* Sched. I (designating Lake Charles Power Center as Mortgage Loan Number 42). Accordingly, the Debtor calculates that "[u]nder applicable provisions of the Internal Revenue Code, as well as the plain language of the PSA, the Note, Mortgage and Loan Documents had to be transferred into the Trust on or before March 2, 2005." Am. Compl. 15 ¶ 69, ECF No. 16. The Debtor alleges that, in violation of the PSA, the Loan was not transferred to the Trust until 2012. Am. Compl. 15 ¶ 69, ECF No. 16.

In 2009, the Debtor began experiencing financial difficulties, and by 2011, the Debtor defaulted on its Loan payments. Am. Compl. 16–17 ¶¶ 79–82, ECF No. 16. Aware of the Debtor's imminent default, the Special Servicer caused Derek Drive to be formed in February 2012. Am. Compl. 17 ¶¶ 83–84, ECF No. 16. The Special Servicer then "orchestrated" a series of alonges, which purportedly transferred the Loan Package. Am. Compl. 17 ¶ 85, ECF No. 16. First, by allonge dated November, 14, 2012, Aurora, as successor to LBB, transferred the Loan Package to Lehman Brothers Holdings Inc. ("LBH").[9] Second, by allonge dated November 26, 2012, LBH endorsed the Loan Package to LaSalle, as Trustee of the Trust. Third, by undated allonge, Bank of America, as successor to LaSalle, transferred the Loan Package to U.S. Bank as Trustee of the Trust. Finally, by undated allonge, U.S. Bank, by the Special Servicer as attorney in fact, transferred the Loan Package to Derek Drive. Am. Compl. 14 ¶ 64, ECF No. 16.

On April 23, 2013, Derek Drive commenced an *ex parte* foreclosure proceeding by filing a Verified Petition for Executory Process in the State Court (the "Foreclosure Action"). Am. Compl. 17 ¶ 87, ECF No. 16. The same day, the State Court signed an Order for Executory

---

[8] The PSA defines "Trust Mortgage Loan Schedule" as "the list of Trust Mortgage Loans transferred on the Closing Date to the Trustee as part of the Trust Fund . . . ." *PSA* 98.

[9] On November 15, 2013, the Debtor filed a Notice of Dismissal as against defendant LBH. ECF No. 12.

Process (the "Order"), which authorized the Clerk of Court to issue a writ of seizure and sale

instructing the Sheriff for the Parish of Calcasieu to immediately seize the Property and sell it at

public auction. Req. Ex. 1, ECF No. 23-1.  Furthermore, the Order directed that Derek Drive be

paid the sale proceeds up to the amount of indebtedness: the principal amount, as of January 11,

2013, of $6,294,417.85; plus interest, default interest, fees, and costs.[10] Req. Ex. 1, ECF No. 23-

1.  The Debtor's bankruptcy petition, filed on July 1, 2013, stayed the sale scheduled to occur on

July 3, 2013. Compl. 18 ¶¶ 91–92, ECF No. 16; Mot. 1, ECF No. 22.

The Debtor now asks this Court to issue a declaratory judgment determining its rights and

remedies regarding the PSA and the Loan Package and Derek Drive's standing to foreclose.

Through the instant Complaint, the Debtor seeks to quiet title to the Property, enjoin Derek Drive

from sharing in the assets of the bankruptcy estate, expunge any claim filed by Derek Drive,

obtain an accounting of the Defendants' profits, and avoid any lien rights that the Defendants

may assert in the Property.  The Defendants move to dismiss the Complaint for lack of subject

matter jurisdiction, pursuant to Rule 12(b)(1), and for failure to state a claim, pursuant to Rule

12(b)(6).

## III. DISCUSSION

### A.  LEGAL STANDARD

Under Rule 12(b)(1), the plaintiff bears the burden to prove the existence of subject

matter jurisdiction by a preponderance of the evidence. *Morrison v. Nat'l Austl. Bank Ltd.*, 547

F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010); *Makarova v. United States*, 201 F.3d

110, 113 (2d Cir. 2000).  "[J]urisdiction must be shown affirmatively." *Shipping Fin. Servs.*

---

[10] The Order calculated indebtedness as principal; plus interest through January 11, 2013, of $375,640.37; default interest of $240,654.03; late fees of $33,297.44; other fees of $65,796.54; and prepayment premium of $547,644.74; plus interest until paid; plus attorney's fees; costs, including court costs and costs of the "Keeper" (*i.e.* receiver); minus funds held in suspense in the amount of $352,435.29. Req. Ex. 1, ECF No. 23-1.

*Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). Thus, while facts alleged in the complaint are taken as true, favorable inferences drawn from those facts cannot be utilized to make the necessary jurisdictional showing. *Morrison*, 547 F.3d at 170; *Shipping Fin. Servs. Corp.*, 140 F.3d at 131.

If "subject matter jurisdiction is challenged under Rule 12(b)(1), evidentiary matter may be presented by affidavit or otherwise." *Kamen v. Am. Tel. & Tel. Co*., 791 F.2d 1006, 1011 (2d Cir. 1986). Accordingly, in ruling on a motion pursuant to Rule 12(b)(1), the court is not limited to the facts in the complaint and may consider matters outside of the pleadings to resolve the jurisdictional issue. *Zappia Middle E. Constr. Co. Ltd. v. Emirate of Abu Dhabi,* 215 F.3d 247, 253 (2d Cir. 2000). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the [federal] court lacks the statutory or constitutional power to adjudicate it." *Makarova*, 201 F.3d at 113.

Under Rule 12(b)(6), a plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must allege enough facts to "nudge[] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In ruling on a motion pursuant to Rule 12(b)(6), the Court may consider the complaint, documents attached to the complaint, documents incorporated into the complaint by reference, and matters subject to judicial notice. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47– 48 (2d Cir. 1991). Other documents, such as affidavits, are generally beyond the scope of a motion to dismiss for failure to state a claim. *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 154–55 (2d Cir. 2006).

"A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction." *Magee v. Nassau Cnty. Med. Ctr.*, 27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998). Thus, as a threshold matter, the Court considers whether it lacks subject matter jurisdiction under the *Rooker–Feldman* doctrine.

### B.  *Rooker–Feldman*

The *Rooker–Feldman* doctrine limits federal subject matter jurisdiction by prohibiting federal courts, other than the Supreme Court of the United States, from acting as courts of appeal by reviewing state court decisions. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005); *In re Richmond*, 513 B.R. 34, 39 (Bankr. E.D.N.Y. 2014). The *Rooker– Feldman* doctrine applies to "[1] cases brought by state-court losers [2] complaining of injuries caused by state-court judgments [3] rendered before the district court proceedings commenced and [4] inviting district court review and rejection of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 284.

The Debtor argues that it does not qualify as a state-court loser because the Foreclosure Action was *ex parte*. In Louisiana, "[e]xecutory process is a special proceeding through which certain secured creditors may obtain speedy capture and disposition of the security provided by

the defaulting debtor." 1A FRANK L. MARAIST, LA. CIV. L. TREATISE, CIV. PROC.-SPECIAL

PROCEED. § 3.1 (2014). In a petition for executory process, the creditor must provide "sufficient

written proof that the creditor is entitled to enforce a mortgage or privilege by executory

process." 1A FRANK L. MARAIST, LA. CIV. L. TREATISE, CIV. PROC.-SPECIAL PROCEED. § 3.3

(2014). "If the plaintiff is entitled [to the relief requested] the court shall order the issuance of a

writ of seizure and sale commanding the sheriff to seize and sell the property affected by the

mortgage." LA. CODE CIV. PROC. ANN. art. 2638 (2014). An order for executory process is a

judgment and an order of the court. *Chambliss v. Atchison*, 2 La. Ann. 488, 490–91 (1847).

For the *Rooker–Feldman* doctrine to apply, "the federal-court plaintiff must have lost in

state court." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005). In

Louisiana, federal courts routinely characterize plaintiffs who had an order for executory process

issued against their property as state-court losers, and focus the jurisdictional analyses on the

other *Rooker–Feldman* prongs. *See, e.g.*, *Cano v. Deutsche Bank Nat. Trust Co.*, Civ. A. No. 12-

2328, 2013 WL 3930087 at *3–*4 (E.D. La. July 29, 2013) (applying Fifth Circuit precedent to

determine that mortgagor stated an "independent claim," such that the court could exercise

jurisdiction). If a party obtains relief from an *ex parte* order in state court, and thereafter brings a

federal suit, it no longer qualifies as a state-court loser. *See Green v. Mattingly*, 585 F.3d 97, 102

(2d Cir. 2009).

The Louisiana Code of Civil Procedure affords a property owner two avenues to

challenge an order for executory process after it has been issued. LA. CODE CIV. PROC. ANN. art.

2642 (2014) ("Defenses and procedural objections to an executory proceeding may be asserted

either through an injunction proceeding to arrest the seizure and sale as provided in Articles 2751

through 2754, or a suspensive appeal from the order directing the issuance of the writ of seizure

and sale, or both.").  A suspensive appeal must be taken within fifteen days of the issuance of the

order for executory process. LA. CODE CIV. PROC. ANN. art. 2642 (2014).[11]  Alternatively, "[t]he

debtor may seek to enjoin the sale when the debt is extinguished or legally unenforceable, or if

the procedure required for executory process has not been followed.  The injunction may be

brought in the executory proceeding or in a separate suit." 1A FRANK L. MARAIST, LA. CIV. L.

TREATISE, CIV. PROC.-SPECIAL PROCEED. § 3.6 (2014).  "Filing for bankruptcy is not one of the

prescribed methods of contesting executory process under Louisiana Code of Civil Procedure

article 2642, and is therefore an insufficient means of protesting against the executory

proceeding." *Antoine v. Chrysler Fin. Corp.*, 2000-0647, p. 3 (La. App. 4 Cir. 3/7/01); 782 So.

2d 651, 653.

  Once an order for executory process has issued, and has gone unchallenged in the state

court, the applicability of *Rooker–Feldman* turns on "what the federal court is being asked to

review and reject" and "the source of the federal plaintiff's alleged injury." *Truong v. Bank of

America, N.A.*, 717 F.3d 377, 382 (5th Cir. 2013).  The Debtor concedes "it had two options

concerning the Louisiana Foreclosure Action and did not exercise them." Opp'n 2 n.2, ECF No.

28.[12]  Thus, the Debtor qualifies as a state-court loser.

_____

[11] To take a suspensive appeal, the appellant must post a bond "for an amount exceeding by one-half the balance due on the debt secured by the mortgage or privilege sought to be enforced, including principal, interest to date of the order of appeal, and attorney's fee, but exclusive of court costs." LA. CODE CIV. PROC. ANN. art. 2642 (2014).  The Debtor argues that it should not qualify as a state-court loser because the bond requirement effectively precluded the Debtor from challenging the Order in the State Court. Opp'n 13, ECF No. 28.  While "[s]uspensive appeal usually is a hollow remedy" because mortgagors cannot afford the bond, courts have upheld the constitutionality of the requirement. 1A Frank L. Maraist, La. Civ. L. Treatise, Civ. Proc.-Special Proceed. § 3.6 (2014).

[12] Clearly, the fifteen days within which the Debtor could have filed a suspensive appeal have passed. According to Defendant's Louisiana Counsel, the Debtor's time in which to file an injunctive proceeding also expired prior to the bankruptcy filing. Tr. 54:5–18, Nov. 13, 2013, ECF No. 15 ("[I]t's too late for them to file an injunction . . . they have to file [a petition for injunction] . . . more than two but not less than ten days prior to the sale.  And here, we got up to the morning of the sale before they actually filed a bankruptcy case.  So if they would have filed the injunction in Louisiana on the date on which they filed the bankruptcy petition, it would have been too late.").  However, Defendant's Counsel's recitation of the facts is incorrect—it is

The *Rooker–Feldman* doctrine applies where there is a "causal relationship between the state-court judgment and the injury of which the party complains in federal court." *McKithen v. Brown*, 481 F.3d 89, 97–98 (2d Cir. 2007).  "[A] federal suit complains of injury from a state-court judgment . . . when the [defendant's] actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 88 (2d Cir. 2005).  A federal court may, however, properly exercise subject matter jurisdiction over an "independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party." *Exxon*, 544 U.S. at 293 (quoting *GASH Assos. v. Vill. of Rosemont, Ill.*, 995 F.2d 726, 728 (7th Cir. 1993).  Therefore, "a plaintiff who seeks in federal court a result opposed to one he achieved in state court" does not necessarily invite review and rejection of that judgment. *Hoblock*, 422 F.3d at 87.  However, simply presenting a new legal theory will not vest the court with subject matter jurisdiction, because "*Rooker–Feldman* bars a federal claim, whether or not raised in state court, that asserts injury based on a state judgment and seeks review and reversal of that judgment." *Hoblock*, 422 at 86.

In the Second Circuit, courts "have consistently held that any attack on a judgment of foreclosure is clearly barred by the *Rooker–Feldman* doctrine." *Solomon v. Ocwen Loan Servicing, LLC*, 12-CV-2856 (SJF)(GRB), 2013 WL 1715878 at *4 (E.D.N.Y. Apr. 12, 2013) (quoting *Feinstein v. Chase Manhattan Bank*, 06-CV-1512 (JFB)(ARL), 2006 WL 898076 at *2 (E.D.N.Y. Apr. 5, 2006)); *see also Brown v. Wells Fargo Bank, N.A.*, 13-CV-3258 (SJF), 2014

---

undisputed that the petition was filed July 1, 2013, while the sale was scheduled to occur July 3, 2013.  The Court takes no position as to whether Defendant's Counsel correctly stated the controlling law. *See* LA. CODE CIV. PROC. ANN. art. 3602 (2014) ("An application for a preliminary injunction shall be assigned for hearing not less than two nor more than ten days after service of the notice.").  This Court need not decide what state-court remedies, if any, are presently available to the Debtor.

WL 1248022 at *3 (E.D.N.Y. Mar. 24, 2014); *Moxey v. Pryor (In re Moxey)*, 12-74340-AST, 2014 WL 1820607 at *6 (Bankr. E.D.N.Y. May 7, 2014). Here, the Debtor explicitly asks this Court "to enjoin enforcement [of the Order] or declare that it may not be enforced." Opp'n 13, ECF No. 28. While the Debtor attempts to distinguish this relief from an action to reverse or appeal the Foreclosure Action, as the Complaint is predicated on a request that the Order issued by the State Court in the Foreclosure Action not be given effect, the Court lacks subject matter jurisdiction to consider the Debtor's claims for relief. *See Posy v. HSBC Bank USA*, 991 F. Supp. 2d 422, 426 (E.D.N.Y. 2013).

The Complaint alleges that "[i]t is unclear if the allonges . . . comply with the legal requirements of the use of an allonge in lieu of endorsement on the note itself." Compl. 14 ¶ 65, ECF No. 16. The Debtor's argument that "[t]he Louisiana Court's failure to undertake a determination of whether the Note, Mortgage and Loan documents were ever transferred to LBUBS (regardless of whether or not such transfer was valid under the PSA) leaves that issue open to this Court," is incorrect because this Court does not have subject matter jurisdiction to consider that issue. Debtor Resp., 2 ECF No. 44. By issuing the Order, the State Court "[i]mplicity f[o]und [the] evidence to be authentic, as Louisiana law requires." Truong, 717 F.3d at 380 (5th Cir. 2013). A debtor who claims in federal court that a judgment of foreclosure is void because of alleged errors by the state court complains of an injury from a state-court judgment, and invites review and rejection of that judgment. *In re 231 Fourth Ave. Lyceum, LLC*, 513 B.R. 25, 32 (Bankr. E.D.N.Y. 2014). Therefore, the *Rooker–Feldman* doctrine prevents the Debtor from challenging in federal court the State Court's determination that Derek Drive had

standing to foreclose, an issue properly raised in a suspensive appeal or an injunction proceeding.[13]

Nevertheless, the Debtor argues that this Court may exercise subject matter jurisdiction because the fraud exception to the *Rooker–Feldman* doctrine applies to the instant proceeding. A claim of fraud must satisfy the heightened pleading standard of Rule 9(b), made applicable through Bankruptcy Rule 7009. *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004).[14]   Here, the Debtor asserts that transfers of the Loan Package were fraudulent because the Defendants "were aware of the failure to comply with the Trust's terms and conditions." Am. Compl. 17 ¶ 85, ECF No. 16.  Further, it contends that the transfers "were shams designed to deceive the courts and other third parties." Am. Compl. 17 ¶ 86, ECF No. 16.  Allegedly, Derek Drive and the Special Servicer intentionally failed to disclose to the State Court that the transfers were untimely. Am. Compl. 18 ¶¶ 88–89, ECF No. 16.  The Debtor posits that, "[h]ad the full facts been disclosed to the [State] Court . . . the [O]rder . . . would not have issued." Am. Compl. 18, ¶ 90, ECF No. 16.

The Second Circuit "has never recognized a blanket fraud exception to *Rooker–Feldman*." *Johnson*, 189 F.3d at 186–87; *see also Ford v. U.S. Dept. of Treasury Internal*

---

[13] The Defendants offered evidence to support their position that the allonges are valid. Defs.' Reply, ECF Nos. 32–34.  The Debtor opposed the introduction of this evidence as being outside the scope of the Motion to Dismiss. Debtor's Obj, ECF No. 35.  To the extent that the evidence regarding the allonges was necessary for this Court to resolve the jurisdictional question, the Court could properly consider it.  However, it is not necessary for the Court to examine the evidence—this Court lacks subject matter jurisdiction to entertain the Debtor's challenge to the allonges' sufficiency.

[14] Rule 9(b), requires that, "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  To "state with particularity the circumstances constituting fraud or mistake," the complaint must specify the statements that the plaintiff contends were fraudulent, identify the speaker, state where and when the statements were made, and explain why the statements were fraudulent. *See Chang*, 355 F.3d at 170; *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993).  To establish "[m]alice, intent, knowledge, and other conditions of a person's mind," the plaintiff must "plead facts that give rise to a strong inference of fraudulent intent." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).  "[S]peculation and conclusory allegations" will not suffice. *Id.* (citation omitted).

*Revenue Serv.*, 50 Fed.Appx. 490, 491 (claim "seek[ing] a declaration that the foreclosure judgment is void" on the basis of fraud barred by *Rooker–Feldman* doctrine).  In limited circumstances, however, some district courts within this Circuit have recognized a fraud exception if a state judgment was procured by fraud and the federal plaintiff did not attempt to vacate that judgment in federal court, but rather sought damages on an alternate theory of relief. For example, in *Goddard v. Citibank*, the plaintiff argued that the defendant "misrepresented the facts to the state court in the foreclosure proceeding." *Goddard v. Citibank, NA*, 04-CV-5317 (NGG)(LB), 2006 WL 842925 at *4 (E.D.N.Y. Mar. 27, 2006).  The court exercised jurisdiction over the plaintiff's claims for conversion and intentional infliction of emotional distress, finding those claims "to be independent from the state court judgment, because they allege[d] *fraud in the procurement* of the judgment" and sought relief in the form of money damages. *Goddard*, 2006 WL at *6 (emphasis in the original); *see also Marshall v. Grant*, 521 F. Supp. 2d 240, 245 (E.D.N.Y. 2007) (finding that the plaintiff was injured by defendants' perjured testimony in state-court divorce proceedings, and not by the judgment itself, such that the *Rooker–Feldman* doctrine did not bar plaintiff's federal suit claims).

Other courts within the Second Circuit decline to recognize a "fraudulent procurement" exception. *See, e.g. Anctil v. Ally Fin., Inc.*, 998 F. Supp. 2d 127, 138–39 (S.D.N.Y. 2014) ("I respectfully disagree with the *Goddard* Court's analysis . . . To the extent Plaintiffs wish to argue that their foreclosures were produced through fraud, *Rooker–Feldman* and 28 U.S.C. § 1257 require them to do so in the state courts that rendered those judgments.").

Here, the Debtor asks that this Court not give effect to the judgment in the Foreclosure Action because the Defendants allegedly procured the Order through fraud.  This claim for relief falls outside even the broadest fraud exception recognized by courts within this Circuit. *See*

*Goddard*, 2006 WL at *4 (acknowledging that the federal court lacked subject matter jurisdiction "[t]o the extent that Plaintiff ask[ed] that [it] find the [j]udgment of [f]orclosure to be invalid"). Because this Court lacks subject matter jurisdiction under the *Rooker–Feldman* doctrine, the Complaint is dismissed pursuant to Rule 12(b)(1).

### C.  The Trust

Even if the *Rooker–Feldman* doctrine did not bar the Debtor's claims, the Court would nevertheless dismiss the Complaint for failure to state a claim under Rule 12(b)(6).

The Debtor posits that the transfer of the Loan Package into the Trust after the closing date was an *ulta vires* act in violation of the PSA. Opp'n 13, ECF No. 28.  The Debtor cites *Wells Fargo Bank, N.A. v. Erobobo*, 39 Misc. 3d 1220(A) (Sup. Ct. Kings Co. 2013), to argue that unauthorized actions by the trustee are void. Opp'n 11, ECF No. 28.  Accordingly, because the transfer of the Loan into the Trust was void, "it is Debtor's contention that [Derek Drive] does not have standing to enforce the Note, Mortgage and Loan Documents." Opp'n 13, ECF No. 28.

The Second Circuit, however, recently rejected *Erobobo* as "unpersuasive." *Rajamin v. Deutsche Bank Nat. Trust Co.*, 757 F.3d 79, 89 (2014).  In *Rajamin*, borrowers sought a judgment declaring that the defendant trusts did not own the borrowers' loans and mortgages because the parties to the trusts breached the terms of the securitization agreements.  Finding that the borrowers lacked standing under the trusts, the district court dismissed the complaint for failure to state a claim.  The Second Circuit affirmed, holding "as unauthorized acts of the Trustee may be ratified by the trust's beneficiaries such acts are not void but voidable; and that under New York Law such acts are voidable only at the insistence of a trust beneficiary or a person acting on his behalf." *Rajamin*, 757 F.3d 89–90.

Furthermore, the United States District Court for the Western District of Louisiana recently determined that this Trust is voidable, not void.  In *LBUBS 2004-C8 Derek Drive, L.L.C. v. Gerbino*, Derek Drive sued the Gerbino family, the Debtor's principals, to enforce their guaranty of the Loan. *Gerbino*, 2:13-CV-2264, 2014 WL 2446362 (W.D. La. May 30, 2014).  In granting Derek Drive's motion for summary judgment, the court "found that the transfer of the note to the plaintiff herein was either valid, or, if merely voidable, that the defendants are not in a position to challenge the transfers' validity." *Gerbino*, 2014 WL at *5.  The Defendants urge this Court to grant their Motion to Dismiss because "[t]he judgment in *Gerbino* collaterally estops the [Debtor] from re-litigating the issue of its standing under the PSA." Defs.' Letter 2, ECF No. 43. The Debtor argues that the *Gerbino* decision should not be given preclusive effect because, *inter alia*, the Debtor's "standing to enforce the PSA was not necessary to the resulting judgment" in district court. Debtor Resp. 3, ECF No. 44.

This Court does not find it necessary to reach the issue of whether collateral estoppel would provide an additional basis for dismissal of the Complaint, pursuant to Rule 12(b)(6). Under *Rajamin*, the Trust is voidable, not void. *See Rajamin*, 757 F.3d at 90.  Additionally, "trust beneficiaries need not *actually* ratify the act to render an act voidable . . . rather, the fact that trust beneficiaries *could* ratify such an act is sufficient to render it voidable." *Tran v. Bank of New York*, 13 CIV. 580 (RPP), 2014 WL 1225575 at *5 (S.D.N.Y. Mar. 24, 2014).  The Debtor is not a proper party to challenge the validity of the transfer of the Loan Package into the Trust, because Debtor is not a third-party beneficiary to the PSA.[15] *See PSA* 331 § 11.09 ("No other Person, including any Mortgagor, shall be entitled to any benefit or equitable right, remedy or

---

[15] The Complaint alleges that the Debtor "is a third party beneficiary of the PSA in the event that a purported assignment is void," but does not cite to a specific PSA provision for this proposition. Am. Compl. 10 ¶ 40, ECF No. 40.  Moreover, the transfers are not void, but voidable.

claim under this Agreement.").  Accordingly, because the Debtor predicates its claims for relief

on an alleged failure to comply with the PSA, the Complaint is dismissed.

IV.  Leave to Amend

The Defendants request that the Complaint be dismissed with prejudice.  Rule 15, made

applicable by Bankruptcy Rule 7015, states that "[t]he court should freely give leave [to amend]

when justice so requires." Fed. R. Civ. P. 15.  However, the court "has discretion to deny leave

for good reason, including futility." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d

Cir. 2007); *e.g. Tran*, 2014 WL *6 (dismissing with prejudice, because "the Plaintiffs have no

standing to bring any claim based on alleged breaches of the PSAs . . . the theory underlying the

Plaintiffs' claims is untenable, any amendment of the Amended Complaint would be futile.").

"To determine whether an amended claim is futile, courts analyze whether the proposed pleading

would withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *Moreira

v. Sherwood Landscaping Inc.*, 13-CV-2640 (JS)(AKT), 2014 WL 4639126 at *6 (E.D.N.Y.

Sept. 16, 2014).

Here, any further assertion by the Debtor that Derek Drive lacks standing to enforce the

Loan Package would be futile.  Even if the Court had subject matter jurisdiction to reconsider the

State Court's order, the Second Circuit has decided that "[t]he law of trusts provides no basis for

[these] claims." *Rajamin*, 757 F.3d at 90.

However, assuming sufficient justification, the Debtor would not be precluded from

objecting on other grounds to Derek Drive's proof of claim once filed.  Furthermore, this

decision is not intended to preclude the Debtors from seeking available relief under the

Bankruptcy Code, if any, to the extent that they hereafter obtain relief from the Order from the

Louisiana courts.  Subject to those two caveats, this dismissal is with prejudice.

V.  Conclusion

For the reasons stated above, the Motion to Dismiss is granted.  The Complaint is dismissed for lack of subject matter jurisdiction.  In the alternative, the Complaint is dismissed for failure to state a claim upon which relief can be granted.  A separate order will issue.



**Dated: September 30, 2014**
       **Brooklyn, New York**
                                **Nancy Hershey Lord**
                           **United States Bankruptcy Judge**